### THE STARLIGHT.*

### THE WISDOMLIGHT.

### THE GEORGE W. WASHBURN.

### THE GEORGE W. DECKER.

District Court, S. D. New York.
July 5, 1938.

Supplemental Opinion Sept. 27, 1938.

*Decree affirmed, O'Brien Brothers, Inc., v. The George W. Washburn, — F.2d —.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine, of New York City, of counsel), for claimant.

### COXE, District Judge.

This is a suit in admiralty by the owner of the scows Starlight and Wisdomlight against the tugs George W. Washburn and G. W. Decker of the Cornell Steamboat Company for damages for injuries sustained by both scows in a collision in the Hudson River, near Verplanck Point, at about 7 A. M. on Sept. 23, 1937. The collision occurred in a dense fog, in which the visibility was about 200 feet. There was an ebb tide at the time of about 1½ miles an hour setting in a southwesterly direction towards Tomkins Cove.

The Starlight and Wisdomlight were the third and fourth scows, respectively, in a tow of five deck scows loaded with cracked stone in tow of the tug "Harold F. O'-Brien", bound down the river from Cold Spring. The scows were close together in tandem formation, with a bridle hawser of 250 to 300 feet from the head boat to the stern of the tug.

The tow left Cold Spring at 4:15 A. M. on Sept. 23rd. It was then only slightly hazy, and the tug went into full speed almost immediately. The mate was at the helm and a lookout on the bow. Fog was encountered off Magazine Point and became thick near West Point. This started the blowing of fog signals, but the speed was not reduced.

In the meantime, Captain Woodward of the O'Brien had come on watch and taken charge of the navigation. Below Jones Point a bell from an anchored vessel was heard ahead. There were also heard ahead, and to the westward, the fog signals of a vessel with a tow. The O'Brien was then proceeding down the easterly side of the river, and on hearing the bell of the anchored vessel, the engines were slowed to ¾ speed. The anchored vessel proved to be an oil tanker in midstream, and was passed about 250 feet off to starboard. Soon afterwards, the Washburn was seen about 2 or 3 points on the starboard bow. Captain Woodward testified she was then about 600 or 700 feet away, heading across the O'Brien's course, and that the O'Brien was making about five miles an hour over the ground.

The Washburn blew two whistles to the O'Brien, which the O'Brien immediately answered with two whistles. The O'Brien thereupon advanced her engines to full speed, swinging slightly to port to clear the Washburn, and, after clearing, returned to her original course. As the tugs passed each other, Captain Woodward of the O'-Brien advised Captain Cullen of the Washburn that he had five scows in his tow. The Washburn cleared the first two of the scows. The bow of the Starlight projected, however, a little beyond the stern of the scow ahead, and the Washburn struck it about four or five feet in from the starboard side, causing the Starlight to dump her cargo, and damaging the bow of the Wisdomlight, the next scow in the tow. As a result, the last three scows in the O'Brien tow were cut adrift, and were later picked up by the G. W. Decker, the helper tug in the Cornell tow, and brought to Tomkins Cove.

The story for the Cornell tugs did not vary materially from that of the libellant. The George W. Washburn, assisted by the G. W. Decker as the helper tug, was bound down the river with a hawser tow of twenty boats arranged in eight tiers, with three boats in each of the front tiers, and a number of single boats tailing out behind. There were two towing hawsers, each about 75 fathoms in length, attached to the corners of the outside boats in the front tier. The tow had started from well up the river, and during the first part of the run

the weather was clear. Fog was encountered opposite West Point, and it was then very dense. At Bear Mountain the fog lifted slightly but almost immediately shut in again. An upbound O'Brien tug was passed at 6:10 A. M., and reported that an oil tanker was anchored below. Captain Cullen of the Washburn came on watch soon afterwards, and was advised of the presence of this anchored vessel. The Washburn was then proceeding at slow speed under one bell, and fog signals were being sounded at regular intervals. There was also a lookout on the bow. The navigation was by compass and by judging the position from the echoes of the fog whistles, and Captain Cullen determined to round to and anchor if the fog had not lifted at Jones Point.

Jones Point was reached at about 6:30 A. M., and was passed about 100 feet off. The fog was still dense, and Captain Post of the G. W. Decker was advised that the tow would round to below the Point, and to govern himself accordingly. The Washburn passed the anchored oil tanker to port, and when about half a mile below it, started to round to, first blowing one long whistle to indicate that it was so proceeding. Captain Cullen testified that he heard the fog whistles of a vessel behind him coming down the river, and that these whistles appeared to be getting closer. During the rounding operation the G. W. Decker was at the tail of the tow on the port side pushing against the boats.

The Washburn came around on a left wheel, and it was only then that the O'-Brien broke into view on the port bow. This was followed almost immediately by the two whistle signal exchange. Captain Cullen testified that the distance separating the two vessels was at the time about 100 feet. He also said that the Washburn was then headed N. E. by N. and had no forward movement. The engines, which had been at "dead slow", were at once placed full astern. The tug cleared the first two scows in the tow but struck the bow of the Starlight, sliding down along the starboard side of the remaining boats after the collision.

■ I think the O'Brien was clearly at fault for proceeding in a dense fog at excessive speed. She was running at full speed at Jones Point, and even when fog signals were heard forward of her beam, her engines were only reduced to ¾ speed. These were plain violations of Article 16

of the Inland Rules, 33 U.S.C.A. § 192. I think, too, that she is to be condemned for being on the wrong side of the channel in violation of Article 25 of the Inland Rules, 33 U.S.C.A. § 210. The Benjamin Franklin, 2 Cir., 145 F. 13; The Iroquois, 1930 A. M. C. 601. There was no good reason for her being there, as there was plenty of room on the westerly side of the river. Moreover, the fog was so thick that it was impossible for the Washburn to know the position of the O'Brien until she was within the range of visibility, which was only 200 feet. I do not believe, therefore, that such cases as the Bellhaven, 2 Cir., 72 F.2d 206, and The S. S. Deutschland, 2 Cir., 90 F.2d 454, have any application.

■ The case for the Cornell tugs is more difficult. They were unexpectedly caught in the Highlands in a dense fog, and had no alternative but to keep on until they reached a place where the tow could round to and anchor. This could only be done safely on the ebb tide south of Jones Point. I do not think, therefore, that Captain Cullen can justly be criticized for proceeding as he did, ascertaining his position by compass and the echoes from his fog signals. The Stirling Tomkins, 2 Cir., 56 F.2d 740. The engines were continuously at slow speed, which was only sufficient to keep the tow in line. At Jones Point the tow was well over on the westerly side of the river, and that position was maintained until the turning operation commenced.

For the O'Brien it is insisted that the Washburn should not have started her turn when she did, knowing that an overtaking tow was approaching from the north. Captain Cullen was, however, faced with a situation in which he was required to stop; he could only do so by rounding his tow; and the waters below Jones Point offered the first chance he had to anchor. To delay would have been hazardous, and his judgment in deciding to act when he did cannot fairly be criticized now after the event. The Hercules, 2 Cir., 73 F. 255; Olsen v. Luckenbach, D.C., 238 F. 237; The Mary T. Tracy, D.C., 298 F. 528.

I do not find anything, either, in the manner in which the maneuver was executed to indicate fault. The Washburn had practically no headway when the O'Brien came into view about 200 feet away. The engines were then placed full astern. As it was, the scows in the O'Brien tow nearly cleared. I am unable, therefore, to find any fault attributable either to the Wash-

burn or the Decker. In any event, the faults of the O'Brien tug are sufficiently gross to remove any doubts with respect to the navigation of the Washburn. The City of New York, 147 U.S. 72, 13 S.Ct. 211, 37 L.Ed. 84; The Coastwise, 2 Cir., 68 F.2d 720.

There may be a decree in favor of the claimant dismissing the libel with costs.

### Supplemental Opinion.

COXE, District Judge.

Since filing my opinion on this case, dated July 5, 1938, I have examined the transcript of Captain Cullen's testimony at the trial, and am satisfied that I was in error in stating that the engines of the Washburn were placed full astern immediately after the O'Brien came into view. The fact is that the engines of the Washburn were continued ahead until just before the collision with the Starlight, when they were put full speed astern; and the contrary finding in the opinion is changed accordingly to state the fact correctly. I do not think that this in any way affects the result.